FERNANDO GAYTAN (SBN 224712)
ADRIANO L. MARTINEZ (SBN 237152)
Earthjustice
707 Wilshire Blvd., Suite 4300
Los Angeles, CA 90017
fgaytan@earthjustice.org
amartinez@earthjustice.org
Tel: 415-217-2020 / Fax: 213-403-4822

*Attorneys for Plaintiffs East Yard Communities for Environmental Justice, People's Collective for Environmental Justice, and Sierra Club*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| EAST YARD COMMUNITIES FOR ENVIRONMENTAL JUSTICE, PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE, and SIERRA CLUB, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and MICHAEL REGAN, in his official capacity as Administrator of the United States Environmental Protection Agency, <br><br> Defendants. | Case No: <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> (Clean Air Act, 42 U.S.C. §§ 7401 et seq.) |

# INTRODUCTION

1. The Greater Los Angeles region has been ranked as having the worst ozone pollution in the nation for all but one of the past 23 years. People who live in the region are exposed to some of the most dangerous air pollution in the country, including ground-level ozone ("ozone") or smog, which is linked to many negative health impacts such as increased susceptibility to lung infections and aggravated lung diseases such as asthma, emphysema, and chronic bronchitis. This region has never met an ozone standard, and there is no real plan to meet any ozone standard.

2. The federal Clean Air Act ("CAA" or "Act) directs the United States Environmental Protection Agency ("EPA") to establish National Ambient Air Quality Standards ("NAAQS") to protect public health and welfare by defining the maximum concentrations of certain pollutants like ozone allowed in our air.

3. The Act adopts mandatory deadlines for meeting the ozone NAAQS that vary depending on the severity of an area's pollution problem. In the 1990 CAA Amendments, Congress gave the most polluted areas designated as "extreme" non-attainment twenty (20) years to attain the ozone NAAQS. The South Coast Air Basin, which is comprised of all of Orange County and the urban portions of Los Angeles, San Bernardino, and Riverside Counties, is designated as an "extreme" non-attainment area for the federal 1997 8-hour ozone standard. 40 C.F.R. § 81.305.

4. Under the Act, it is up to states to develop emissions-reducing regulations following strategies set forth in State Implementation Plans ("SIP") to meet NAAQS, or reach "attainment." California delegates some of its authority to local air districts to develop rules to meet national and state air quality standards.

5. Because the South Coast Air Basin is designated an "extreme" non-attainment area, air regulators were afforded the opportunity to use Section 182(e)(5) measures, which are known as "black box" measures, to meet some of their initial planning requirements.

6. Using "black box" measures provides an unfavorable trade-off for breathers in the region. While the use of these measures has allowed the South Coast Air Quality Management District ("South Coast AQMD") and the California Air Resources Board ("CARB") to have their plan approved on the front end, the promises that agencies would fill the "black box" with viable pollution control measures have never fully materialized. Fortunately, the Act also requires contingency measures for Section 182(e)(5) "black box" control measures that must be implemented if the "black box" measures fail to achieve the emission reductions anticipated as part of the plan.

7. On December 31, 2019, CARB submitted the Contingency Measure Plan for Section 182(e)(5) "black box" measures adopted by the South Coast AQMD on December 6, 2019 to EPA.

8. Under the Clean Air Act, EPA has a non-discretionary duty under section 110(k) of the Act to review and act upon SIPs submitted on contingency measures put forward by a State air agency pursuant to CCA section 182(e)(5).

9. On the eve of failing to attain the 1997 8-hour ozone standard, EPA has failed to take action on the Contingency Measure Plan. Thus, EPA has been in violation of its statutory duty since July 1, 2021, when it was required to act on the plan submitted by CARB.

10. Plaintiffs EAST YARD COMMUNITIES FOR ENVIRONMENTAL JUSTICE, PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE, and SIERRA CLUB (collectively "Clean Air Advocates") seek to vindicate the rights that Congress provided citizens to ensure that air plans actually drive towards attainment of the ozone NAAQS. Thus, these organizations bring this action under the federal Clean Air Act ("CAA"), 42 U.S.C. §§ 7401, *et seq.* to compel EPA to comply with its statutorily required, non-discretionary duty to review and act upon California's SIP submittal on contingency measures, approved by the South Coast AQMD and CARB, and submitted to EPA for approval on December 31, 2019.

## JURISDICTION AND VENUE

11. The instant action arises under the CAA, 42 U.S.C. §§ 7401 *et seq*. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604 and 28 U.S.C. §§ 1331 and 1361. The relief requested by Plaintiffs is authorized pursuant to 42 U.S.C. § 7604 and 28 U.S.C.§§ 2201, 2202, and 1361.

12. Clean Air Advocates have exhausted all administrative remedies and have no adequate remedy at law. Specifically, Clean Air Advocates provided EPA with written notice of the claims stated in this action at least sixty (60) days before commencing this action as required by 42 U.S.C. § 7604(b)(2). More than sixty (60) days have passed since the notice was served, and the violations complained of are continuing. *See* Exhibit A (Letter from Fernando Gaytan, counsel for Clean Air advocates, to Michael Regan, Administrator of EPA, dated June 10, 2022).

13. The declaratory and injunctive relief that Clean Air Advocates request is authorized by 28 U.S.C. §§ 2201(a) and 2202, and 42 U.S.C. § 7604.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) since: (i) a substantial part of the events and omissions giving rise to this claim have occurred in this district because the South Coast AQMD's Contingency Measure Plan was prepared in this district and the air quality impacts that should be governed by the Plan will be felt by this district; and (ii) Plaintiffs EAST YARD COMMUNITIES FOR ENVIRONMENTAL JUSTICE and PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE reside in this district.

## PARTIES

15. Plaintiff EAST YARD COMMUNITIES FOR ENVIRONMENTAL JUSTICE ("EYCEJ"), a nonprofit corporation organized and existing under the laws of the State of California, is an environmental health and justice organization working towards a safe and healthy environment for communities that are disproportionately suffering the negative impacts of industrial pollution. EYCEJ represents approximately 1,000 members in East Los Angeles, Southeast Los Angeles, Long Beach, Carson, and Wilmington—all areas that are within the South Coast Air Basin. Through grassroots organizing and leadership-building skills, EYCEJ prepares community members to engage in policy issues of environmental justice and air quality at the regional, statewide, and national levels. The organization's members, most of whom reside in the South Coast Air Basin covered by the South Coast AQMD and disproportionately face many of the known detrimental health consequences of air pollution and seek enforcement of the Clean Air Act to ensure that regional, state, and federal agencies take steps to reduce air pollution and improve air quality in the region.

16. Plaintiff PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE ("PC4EJ") is a nonprofit organization organized and existing under the laws of the State of California. It is dedicated to building community power in the Inland Empire region of Southern California, which is part of the South Coast Air Basin, to fight against pollution and environmental racism. PC4EJ represents over 1,000 community members in the Inland Empire who are impacted by the air pollution across the region caused by freight, goods movement, and other industrial activities throughout the region. PC4EJ's members reside in the South Coast Air Basin covered by the South Coast AQMD and disproportionately face many of the known detrimental health consequences of air pollution and seek enforcement of the CAA to ensure that regional, state, and federal agencies take steps to reduce air pollution and improve air quality in the region.

17. Plaintiff SIERRA CLUB, a corporation organized and existing under the laws of the State of California, is a national nonprofit organization of more than 600,000 members, with more than 130,000 living in California, and a local Southern California chapter headquartered in Los Angeles County. SIERRA CLUB is dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of earth's ecosystem and resources; to educating and encouraging humanity to protect and restore the quantity of the natural and human environment; and to using all lawful means to carry out these objectives. SIERRA CLUB has been a strong and constant advocate for reducing dependence on fossil fuels to cut air pollution. Several SIERRA CLUB members and staff reside in the South Coast Air Basin covered by the South Coast AQMD and disproportionately face many of the known detrimental health consequences of air pollution and seek

enforcement of the CAA to ensure that regional, state, and federal agencies take steps to reduce air pollution and improve air quality in the region.

18. The acts and omissions of EPA complained of herein cause injury to Plaintiffs, their members, and staff by allowing section 182 (e)(5) "black box" measures to continue without contingency measures to apply when the emission reductions associated with "black box" measures do not materialize. This delay injures Plaintiffs and their members by allowing poor air quality conditions to persist that impair or threaten members' health and welfare, and by delaying measures mandated by the Act to protect Plaintiffs' health and welfare from ozone-related pollution. The health, recreational, aesthetic, and environmental interests of Plaintiffs' members have been and continue to be adversely affected by the acts and omissions of EPA.

19. For all the foregoing reasons, the failures complained of herein cause Plaintiffs and their members' injuries for which they have no adequate remedy at law. Granting the requested relief would redress these injuries.

20. Defendant EPA is a federal agency charged with the implementation of the CAA.

21. Defendant MICHAEL REGAN is sued in his official capacity as the Administrator of the EPA. He is responsible for taking various actions to implement and enforce the CAA, including the actions sought in this Complaint.

## FACTUAL BACKGROUND

**I.    The CAA's Requirements for NAAQS**

22. The Act establishes a comprehensive scheme "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

23. As one of its central features, the Act requires the Administrator to set NAAQS for certain air pollutants. 42 U.S.C. § 7409(a). Under the Act, the Administrator must set "primary" standards for those pollutants at levels that will protect the public health with an adequate margin of safety, *id*. § 7409(b)(1), and "secondary" standards at levels that will "protect the public welfare from any known or anticipated adverse effects associated with the presence of those pollutants in the ambient air." *Id*. § 7409(b)(2).

24. In 1997, EPA adopted a national ambient air quality standard on the daily maximum 8-hour average concentrations of ozone of 0.08 parts per million. 62 Fed. Reg. 38,856 (July 18, 1997) (codified at 40 C.F.R. § 50.10).

25. Ozone is a colorless, odorless reactive gas comprised of three oxygen atoms. It is formed by the chemical reaction between nitrogen oxides and volatile organic compounds in the presence of sunlight.

26. Ozone pollution, also referred to as smog, reacts with internal body tissues and can trigger various health problems, including chest pain, coughing, throat irritation, and congestion. It can reduce lung function and inflame the linings of the lungs, causing lung damage — increasing their susceptibility to infection while reducing their capacity. It can also result in low birth weight in babies. Repeated exposure to ozone may permanently scar lung tissue. Exposure can also worsen bronchitis, emphysema, and asthma.

27. Ozone concentrations above the national 8-hour standard result in increases in school absenteeism, increases in respiratory hospital emergency department visits among asthmatics and patients with other respiratory diseases, increases in hospitalizations for respiratory illnesses, increases in symptoms

associated with adverse health effects, including chest tightness and medication usage, and increases in mortality due to non-accidental, cardio-respiratory deaths.

28. The Clean Air Act directs EPA to designate areas with ambient air concentrations that exceed a national standard as "non-attainment" areas. 42 U.S.C. §7407(d)(1).

**II. Ozone in the South Coast Air Basin and the False Promises of the "Black Box"**

29. The South Coast Air Basin has been ranked among the worst in the nation for ozone. Residents living in the region, particularly those who are most vulnerable to pollution, including children and persons with lung diseases, outdoor workers, and the elderly, suffer ozone-caused health impacts at higher levels compared to other regions.

30. EPA's designation of the South Coast Air Basin as an "extreme" non-attainment area for the 1997 8-hour ozone standard became effective on June 4, 2010. 40 C.F.R. § 81.305. EPA has also designated the South Coast Air Basin as an "extreme non-attainment" area for the 2008 and 2015 8-hour ozone standards. To date, the South Coast Air Basin has failed to attain any of the ozone standards established by EPA.

31. The Clean Air Act provides that each state with a non-attainment area, like the South Coast Air Basin, must adopt a plan for improving air quality in that area to meet the national standards. 42 U.S.C. §§ 7407(a), 7410(a), 7502(b), and 7511a.

32. As part of its prior Air Quality Management Plans ("AQMP"), the South Coast AQMD relied on the anticipated development of new control techniques or improvement of existing control technologies to reduce emissions by attainment

deadlines. These provisions, known as "black box" measures, are allowed only in areas of extreme non-attainment like the South Coast Air Basin. 42 U.S.C. § 7511(e)(5). The CAA requires districts relying on "black box" measures, like South Coast AQMD, to submit a Contingency Measure Plan containing measures calculated to achieve actual emissions reductions should the anticipated technology fail to materialize or result in the required emissions reductions by the attainment date. The contingency measures must be in place to immediately take effect upon failing to attain an ozone standard and must be submitted for EPA approval three years before the attainment date. *Id.* The South Coast Air Basin has an attainment date of June 15, 2024 for the 1997 8-hour ozone standard. No air quality official at the South Coast AQMD or CARB has indicated any prospect of actually attaining by the statutorily required date.

33. While South Coast AQMD and CARB have used the "black box" as a technical way of getting plans approved, they have not followed through with closing the "black box" through additional measures that would close the gap in emissions reductions left due to reliance on the "black box."

34. Since July 1, 2021, when EPA failed to act on its non-discretionary duty to review the pending SIP amendment submitted by California, the South Coast Air Basin has had one of the worst ozone seasons in close to three decades, in addition to hundreds of days in which air quality reached unhealthful stages.

35. The South Coast Air Basin will fail to meet the 1997 8-hour ozone standard without further action to reduce emissions.

36. Consequently, South Coast Air Basin residents, including members of Plaintiff organizations and their local chapters, and especially the most vulnerable to pollution, continue to suffer from elevated ozone levels.

### III. EPA's Non-discretionary Duty to Act upon California's SIP submittal concerning Section 182(e)(5) "Black Box" Contingency Measures for the South Coast Air Basin

37. Section 110(k)(2) of the CAA directs EPA to act in accordance with Section 110 (k)(3) on approval or disapproval of plans submitted by states, including contingency measures intended to address the provisions of the CAA.

38. Under the CAA, such plans must be submitted to EPA for review. 42 U.S.C. §§ 7410(a) and 7502(b). EPA is responsible for ensuring that the plan complies with the requirements of the CAA and must approve or disapprove the plan accordingly. *Id.* §§ 7410(k) and (l).

39. Within six (6) months after the submission of a plan, EPA is required to determine whether the submittal meets EPA completeness criteria. 42 U.S.C. § 7410 (k)(1)(B). If EPA makes no completeness finding before the six-month deadline, the plan shall be determined to be complete as a matter of law six (6) months after submittal. *Id.*

40. EPA has a non-discretionary duty to act on a submitted plan within twelve (12) months after the completeness determination. 42 U.S.C. § 7410(k)(2).

41. If EPA fails to take a non-discretionary action, such as acting on a state implementation plan submittal and related Section 182 (e)(5) "black box" contingency measures plan, citizens are empowered to seek a court order to compel prompt action. 42 U.S.C. § 7604(a)(2).

42. On December 31, 2019, CARB submitted to EPA a SIP submittal on contingency measures submitted by SCAQMD pursuant to Section 182(e)(2).

43. EPA was required to act on the plan by either rejecting, partially approving, or approving by July 1, 2021, but failed to take its legally required non-discretionary action.

44. Since July 1, 2021, EPA has violated and continues to be in violation of, its mandatory duty under Section 110(k)(3).

## CLAIM FOR RELIEF

### EPA's Failure to Act on a Submitted State Implementation Plan

45. Plaintiffs hereby incorporate all previous paragraphs by reference.

46. Since California's SIP amendment containing the Contingency Measure Plan for the South Coast AQMD became complete as a matter of law on July 1, 2020, EPA was obligated to act on the plan submittal no later than July 1, 2021. 42 U.S.C. § 7410(k)(2).

47. EPA has taken no action to approve or disapprove California's SIP amendment related to the "black box" contingency measures for the South Coast Air Basin submitted on December 31, 2019.

48. Accordingly, EPA has been in continuous violation of 42 U.S.C. § 7410(k)(2) since July 1, 2021, when it failed to act.

49. This CAA violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator," within the meaning of the CAA's citizen suit provision. 42 U.S.C. § 7604(a)(2). This violation is ongoing and will continue unless remedied by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court to grant the following relief:

1. DECLARE that EPA is in violation of the Act for failing to act on California's SIP on Contingency Measures for the South Coast Air Basin submitted on December 31, 2019;

2. ISSUE an injunction directing EPA to take action on California's SIP on Contingency Measures for the South Coast Air Basin, as required by law;

3. RETAIN jurisdiction over this matter until such time as EPA has complied with its non-discretionary duties under the Clean Air Act;

4. AWARD to plaintiffs their costs of litigation, including reasonable attorney and expert witness fees; and/or

5. GRANT such additional relief as the Court may deem just and proper.

Dated: May 9, 2023

/s/   Adriano L. Martinez
ADRIANO L. MARTINEZ (SBN 237152)
FERNANDO GAYTAN (SBN 224712)
amartinez@earthjustice.org
fgaytan@earthjustice.org
Earthjustice
707 Wilshire Street, Suite 4300
Los Angeles, CA 90017
Tel: 415-217-2020 / Fax: 213-403-4822

*Counsel for East Yard Communities for Environmental Justice, People's Collective For Environmental Justice, and Sierra Club*